George W. Graves et al.

*vs.*

Curtis Moses et al.

A person taking a thing to hire engages to use it well, to take care of it, to return it, and to pay the price of hire; and a breach of any of these engagements is a breach of a contract between the letter to hire and the hirer, for which the former may recover damages. If bad usage or want of care on the part of the hirer of a horse produce his death, the value of the horse may be recovered.

It is the duty of the letter to hire, in case the horse be made sick by the misconduct or neglect of the hirer, to use all reasonable exertions to cure him and prevent his death, and for the expense to which he is put, and the trouble and attention which he is obliged to bestow in making such exertions, he may recover damages.

Graves et al., v. Moses et al.

For the purpose of showing that Hammond, one of the defendants, was no party to the contract of hiring in this case, the defendants' counsel proposed to prove that Hammond was invited by the defendant Moses to go on the excursion as his friend and guest, and that on giving the invitation Moses said to him, "Go with us on this fishing excursion as my friend, and it shall not cost you a cent. I have already engaged a team of Graves to go, and there is a seat for you." *Held*, that the evidence was improperly excluded under the circumstances of this case.

In an action brought upon a contract of hiring, to recover damages for the breach of its obligations, a person who is not a party to the contract is not responsible for injury done to the thing hired, even though such injury is caused by his own carelessness or negligence.

This action was brought in the District Court for Olmsted county, and comes here by an appeal taken by the defendants from an order of that Court denying a motion for a new trial, made by them after a verdict for plaintiffs. A sufficient statement appears in the opinion of the Court.

JONES & BUTLER for Appellants.

CHARLES C. WILSON for Respondents.

*By the Court*—BERRY, J.—The complaint in this case alleges that the plaintiffs let to hire, and delivered to the defendants, to be driven and used by them, a stallion, mare, harness and carriage, and that the defendants so immoderately drove and improperly cared for the mare, that she became sick and died. The complaint is not as clear and definite as it might be, but the action is evidently based upon the alleged contract of the defendants, and damages are asked for its breach. This appears to be the construction put upon the complaint by the counsel for both parties. Among the engagements of a party taking a thing to hire are to use it well, to take care of it, to return it, and to pay the price of hire. *Edwards on Bailments*, 312; *Harrington vs. Snyder*, 3

Graves et al., v. Moses et al.

*Barb.*, 381.   And even if these engagements are not express, the law implies them, and a breach of any of them is a breach of the contract between the letter to hire and the hirer.   The party injured is entitled to recover such damages as are the natural and proximate consequences of a breach of contract. 2 *Gr. Ev.*, *sec.* 256.   If the hirer, in a case like this at bar, fails to pay for the use of the thing hired, to use it well, to take due care of it, for all these failures the letter to hire is entitled to damages.   If the bad usage or want of care produce the death of a horse hired, as alleged in this case, the value of the horse may be recovered.   And as the party injured " can charge the delinquent party only for such damages as by reasonable endeavors and expense he could not prevent" (2 *Gr. Ev.*, *sec.* 261 ; *Sedgwick on Damages*, 94, 95), he is required in case a horse let to hire, be made sick by the misconduct or neglect of the hirer, to use all reasonable exertions to cure him and prevent his death.   The expense to which he is put, and the trouble and attention which he is obliged to bestow for this purpose, are occasioned by the breach of the hirer's engagement, and are natural and proximate damages resulting from it, and for these also he is entitled to recover.   *Vandershire vs. Newton*, 4 *N. Y.*, 133. And although the complaint is certainly open to criticism, we think it substantially sets out all these grounds of damages, general and special.   It appears that the mare having fallen sick on the road, the defendants left her at one " Woodard's," twelve miles out of Rochester (where the team was let, and the plaintiff resided), and that one of the plaintiffs went to " Woodard's " to see to her on two occasions, and on the last brought her home.   One of the plaintiffs being on the stand was asked :   " What was it worth for yourself and team going to Woodard's ? "   The question was objected to as irrelevant, but we think it was properly asked.   The plaintiffs

had the right, and perhaps it was their duty to go and see the mare, and to attend to her, and to bring her home. This was part of the care and attention and expense which are set up as ground for special damages in the complaint. As to the objection made to this question, as well as others, on the ground that the mare is valued in the complaint at $350, while the whole amount of damages claimed is only $350, and that therefore no damage is claimed for anything but the value of the mare, it is possible that this discrepancy might have been considered below in a motion to make the complaint more definite and certain, but we shall not consider it here. It is plain enough that the plaintiffs were seeking damages beyond the value of the mare, though they may not have asked for it by the most accurate pleading. One of the plaintiffs' witnesses was asked as to the value of the use of the stallion, wagon and harness per day, and the question was objected to as irrelevant. We do not perceive how this question could have prejudiced the defendants. If the plaintiffs were satisfied with a part of the price for the use of the team let, the defendants have no reason to complain because the whole price is not demanded. George C. Cook, a witness called by defendants, testified in substance that he had kept a livery stable in Rochester nine years, and had known the mare in question ever since she had been brought there. He was then asked to "state whether or not this mare was a proper animal to be used and let for the purposes of a livery stable, and to be driven off on a hunting excursion." The Court excluded the testimony sought to be introduced, on the ground that the witness did not "show himself sufficiently acquainted with the mare." We think this was right. The witness might have *known* the mare *by sight*, to use a popular expression, and yet have no means of forming an opinion upon the subject of the inquiry.

There are several other reasons why the question was properly excluded. The answer sets up no other unfitness of the mare for the purposes for which she was hired, except that she was sick, so that an inquiry as to general unfitness was too broad, and outside of the issues. For the purpose of showing that Hammond, one of the defendants, was no party to the contract of hiring, the defendants' counsel proposed to prove that he (Hammond) was invited by the defendant Moses to go on the excursion as his friend and guest, and that on giving the invitation Moses said to him, "Go with me on this fishing excursion as my friend; it shall not cost you a cent. I have already engaged a team of Graves to go, and there is a seat for you." The evidence was excluded, but we are of opinion that it should have been admitted. This action is upon an alleged contract, and Hammond can not be held for the breach of it unless he was a party to the contract. As there appears to be no direct evidence of an actual hiring by him, but his character as a hirer is left to be inferred from the fact that he accompanied the other defendants, and took charge of the team, we think it was proper for him to rebut this inference by showing that he went as a guest of other parties, who were the actual hirers of the team. Hammond had already testified that he had nothing to do with the hiring or procuring of the team, and the testimony excluded was corroborative of Hammond's testimony, and tended to explain how it was that he went on the excursion and took charge of the team, without being a party to the contract of hiring. The Court charged the jury that "the plaintiffs would also be entitled to recover what you shall find from the evidence to be the value of the use of the team while defendants had it, and the value of plaintiffs' service in going to Woodard's twice, and the value of the service done by plaintiffs in taking care of the mare while sick, including the

value of the service of the farriers on the day before she died." If the services were performed and the expenses incurred in making reasonable exertions to cure the mare and prevent her death, this is in accordance with the views expressed in the early part of this opinion.

The Court further instructed the jury that "if they should find from the evidence that the defendants undertook to take special and extra care of the mare, then the defendants are chargeable with such extra diligence, and if they failed to bestow such diligence, and in consequence of that neglect the mare died, then the jury will find a verdict as before directed," that is, for the plaintiffs, for the value of the mare, &c., &c. As there is no allegation in the complaint that the defendants agreed to take special or extra care of the mare, nor any claim for damage for want of such care, and as claimed by the plaintiffs' counsel, the plaintiffs on the trial appear to have relied upon the implied obligations of the defendants, we think this instruction was not called for by the case. The same remark is applicable to that part of the charge which related to driving the team to a place different from that which it was hired to go to. As we give a new trial on other grounds it is unnecessary to inquire whether the two instructions last referred to were calculated to mislead the jury or not. The exception to all the above instructions, with others with which no fault is found here, was taken in the mass. Of course this is not the proper way to except to instructions, but upon this point we will not dwell.

The defendant, Hammond, requested the Court to charge the jury as follows: "If the jury find from the evidence that defendant Hammond had nothing to do with the hiring of the team, but was simply the guest of one of the other defendants, and accompanying the other defendants as a friend, by invitation, then he is not responsible for any injury to the team."

The Court refused the instruction as asked, but gave the same to the jury with these words added : " Unless caused by his own carelessness or negligence." The defendants excepted to the refusal and to the charge as given, and we are of opinion that the Court erred, and that the exceptions were well taken.

This action is brought upon the contract of hiring, and it is for the breach of the obligation which the law imposes upon a hirer that a recovery is sought. If Hammond was not a party to the contract, he is not liable for its breach, and in an action upon the contract, his carelessness and negligence, though producing damage to the plaintiffs, are unimportant.

The order refusing a new trial is reversed.