# GEORGE F. CASHMAN v. OTTO BREMER AND OTHERS.[1]

November 24, 1939.

Nos. 32,074, 32,075.

*Edgerton, Green & Edgerton,* for appellant.

*John P. Devaney* and *Thomas F. Clifford,* for respondent Otto Bremer.

*Samuel Lipschultz,* for respondents Richard Converse and C. H. Bolsta.

[1]Reported in 288 N. W. 732.

HILTON, JUSTICE.

This is an appeal from orders of the district court for Ramsey county striking certain allegations from the complaint.

The difficulties between the litigants grow out of transactions connected with the First State Bank of Correll, hereinafter called First Bank. It appears that there have been a series of business dealings between defendant Bremer and plaintiff in connection with the First Bank's affairs. A rift seems to have developed, and some of the transactions have become the subject of legal action. See, for instance, Cashman v. Bremer, 195 Minn. 195, 262 N. W. 216.

In the present suit plaintiff seeks to recover from defendants upon the alleged ground (set forth in paragraph IX of the complaint) that they wrongfully and maliciously conspired to institute civil actions maliciously and without probable cause against the plaintiff for the purpose of defrauding him of his property and damaging his financial status. It is also alleged that he was damaged in his business, reputation, and financial standing by defendants' refusal to cause certain obligations of the First Bank, for which plaintiff was liable to third parties, to be paid. Following this is the allegation that pursuant to this conspiracy and as part of it defendants did the things "hereinafter * * * set forth."

Paragraph X, which was stricken, except a portion with which we need not be concerned, sets out in the form of allegations the following matter (stated here in the form of facts for convenience). Defendant Bremer owned the controlling stock of the First Bank and of the American National Bank of St. Paul. Plaintiff, at Bremer's request, executed, as accommodation maker, a note for $15,000. Bremer and the First Bank appear to be the accommodated parties. The American National Bank was the payee. Bremer agreed to save plaintiff harmless and to see that certain land was sold to pay the note. It is then alleged that Bremer and Bandura refused to let the First Bank pay the note when due, but rather Bremer caused an action to be instituted

on the note, whereby plaintiff was obliged to pay $9,997.65, the balance due after the collateral was sold. Plaintiff then brought an action against Bremer and recovered the full amount he had paid out. Bremer perfected an appeal to this court, and the recovery was sustained. Cashman v. Bremer, 195 Minn. 195, 262 N. W. 216. It was there held, among other things, that there could be a recovery on the contract for breach even though no proof of the deceit or fraud alleged was adduced. Plaintiff now claims that by reason of the failure to pay the note he was damaged in his credit and business.

The entire allegations contained in paragraph XII were stricken also. They were to the effect that in 1923, plaintiff, at the request of Bremer, took title to certain realty owned by the First Bank and upon which there was a mortgage. Plaintiff, for the accommodation of the bank, took title and then executed a renewal note and mortgage. Immediately thereafter the title was reconveyed to the First Bank. The mortgagee insisted upon payment, and defendants Bremer and Bandura refused to permit the First Bank to pay. Plaintiff was forced by action to meet the obligation. Through an assignee, judgment was recovered against the First Bank for the amount expended. Plaintiff now owns this.

It is conceded that neither paragraph X nor XII charges a malicious prosecution. Plaintiff states:

"It would seem clear without further argument that the only question is as to whether or not the matter charged in paragraphs X and XII are such wrongs as may properly be considered in a conspiracy action, and whether appellant [plaintiff] is now barred from setting them up."

To ascertain whether error occurred below, the first step necessary is to examine the nature of plaintiff's allegations set forth in the eliminated portions of the pleading. Plaintiff has characterized it thus:

"It is the contention of appellant, however, that each of these paragraphs [X and XII] charges actionable wrongs; that these

actionable wrongs were in furtherance of the conspiracy charged in paragraph IX * * *."

Under our practice, facts showing a right to recover on any theory suffice. However, for convenience, it may be said that the essence of the theory of the present pleading disclosed by the complaint is that a tort action for conspiracy is being asserted. In such an action, it seems evident, that the conspiracy does not of itself furnish a cause of action since no damage results. 11 Am. Jur., Conspiracy, § 53. Rather it is the overt acts committed in pursuance thereof and which inflict damage that serve as the footings for recovery. 15 C. J. S., Conspiracy, § 6. Plaintiff has set forth certain specific acts upon which he relies. In addition, paragraphs X and XII are included on the theory that they are "actionable wrongs" committed in "furtherance of the conspiracy." Manifestly, irrespective of the terminology employed, whether it is "actionable wrongs" or some other characterization, unless the allegation set forth grounds upon which legal liability can now be predicated, they are immaterial in this action and were properly stricken. We need look no further for a basis for disposition of this controversy.

The pleadings clearly disclose that both the breaches of contract (we can regard the action brought in Cashman v. Bremer, 195 Minn. 195, 262 N. W. 216, of this character) have been the subject of suits in which judgments have been recovered. In the suit involved in the above stated case and set out in allegation X the judgment was satisfied. In the case of the judgment procured against the First Bank the judgment has not been satisfied. Plaintiff now asserts that, in addition to the actual outlay made, damage was suffered in his financial and business status by, among other things, the two breaches of contract set out in the eliminated paragraphs. Assuming this to be true, can these "actionable wrongs" be the present basis of recovery? To determine this, inquiry must be made into the nature of plaintiff's present rights, if any.

Both Bremer and the First Bank (acting through some of the defendants) had the power but not the right to breach the contracts. By so doing, they became liable for all damage, general and special, inflicted. Plaintiff could have proceeded to restore his loss by actions based upon contract, or, if he wished, could have used the breaches as the foundation for a tort action, such as the present, for conspiracy. In either action, all damages flowing from the breaches could have been litigated and recovered, since the right thereto was in existence at the time the breach occurred. Whether the amount of the damage would be identical need not be determined. Plaintiff had the right to adhere to the theory of recovery most advantageous to him. He sued Bremer on the contract and recovered a judgment. This has been satisfied. It cannot with seriousness be now claimed that as to the breach for which the judgment has been satisfied there is any additional right to recover damage from defendants. Satisfaction operates as a bar to the recovery of damage for which defendants might otherwise be answerable. Plaintiff had but *one cause of action* capable of being asserted through different remedies predicated on available theories of recovery. The satisfaction of the judgment based upon breach of contract rendered plaintiff whole insofar as the law is concerned. If the remedy he pursued to satisfaction did not actually restore his loss in full, it is now too late to complain. Opportunity existed to assert the cause of action on a theory which would bring the greatest recovery. If plaintiff failed to avail himself of this, he alone is to blame. There was no error with respect to paragraph X.

With respect to the allegations found in paragraph XII, a more difficult question is presented. Plaintiff there alleged that he "assigned his claim against the First State Bank of Correll for the amount so paid to one George Hanscom, who recovered a judgment against said bank * * * for the sum of $2,257.56." It appears from the pleadings that there has been no satisfaction of this judgment.

We need not determine whether Penn Anthracite Min. Co. v. Clarkson Sec. Co. 205 Minn. 517, 287 N. W. 15, would ordinarily

justify the procedure here sought to be pursued. Grounds exist in the assignment made to Hanscom which prevent plaintiff from making this cause of action the basis of recovery against defendants. Here again plaintiff had but one single cause for damage suffered. It, too, was capable of being asserted through different remedies based upon different theories. Again, as in the situation previously discussed, he could have used it as a basis to make defendants respond in tort or the First Bank in contract. Both remedies were available although only one cause of action existed. The right to recover the items of loss alleged in paragraph XII was in existence at the time the assignment was made to Hanscom. When plaintiff assigned the claim, it was not merely the assignment of a remedy; he assigned the cause of action itself. This is necessarily true, for unless Hanscom possessed it he had no right which he could assert against the bank. This alone is what rendered the bank responsible to him. Having parted with the cause of action, plaintiff cannot now make it the source of recovery against defendants upon any theory advanced to us. Upon it all plaintiff's rights are dependent, and since "an assignment is a transfer or making over to another of the whole of any property, * * * in possession or in action," (5 C. J. p. 836), plaintiff no longer has a ground for claim.

The mere fact that plaintiff might have been able to assert the cause against more parties and on other theories of recovery, and perhaps recover more items of loss than the assignee, does not alter the result. He parted with the cause of action, and if the assignee was willing to take it subject to the limitations upon his ability to assert it, that was his risk.

The present ownership of the judgment does not place plaintiff in any better position. It simply makes him a judgment creditor. It does not furnish a ground now to pursue defendants on any new theory.

This disposes of the decisive issues. Other arguments made have been considered but do not merit comment.

The orders appealed from are affirmed.

STONE, JUSTICE (dissenting).

On its face, the complaint is somewhat equivocal in that, while it suggests malicious prosecution, it also implies, if it does not express, malicious interference with the rights of contract between plaintiff and third parties. It is upon the latter theory that most of the argument has proceeded.

It is a safe premise that if the stricken averments are of facts with no relevancy as an essential of the cause of action, it was proper to strike them, even though on a trial they, or some of them, might become proper as evidence. I agree that paragraph X, dealing with the "Bank" case, was properly stricken. But, although as a cause of action the bank matter is at an end, we should not now hold, or seem to hold, that it, or some part of it, may not become relevant as evidence if this case is tried. Aside from the main issue of malicious prosecution or tortious interference with contract rights, there may be collateral issues, in the contest of which some or all of the bank matter may become material. That will be for decision by the trial judge when the time comes.

As to the "Aetna" case, it is respectfully submitted that it was error to strike paragraph XII. Briefly, the facts as thereby made to appear (see Aetna L. Ins. Co. v. Cashman, 181 Minn. 82, 231 N. W. 403) are that plaintiff had a claim in contract against the Correll bank, and that defendants wrongfully and maliciously prevented its payment by the bank. Plaintiff assigned the claim to another (whether for collection or absolutely does not appear) who procured judgment thereon and then assigned the judgment to plaintiff. The claim has not been paid. Nor, if the complaint is true, will it ever be, payment having been prevented by the wrongful acts of defendants. The bank is hopelessly insolvent, and the possibility of collecting by assessment of stockholders is gone by reason of the running of the statute of limitations. In re Dissolution of First State Bank of Correll, 206 Minn. 250, 288 N. W. 709.

It is important that, while plaintiff's contractual demand was merged in judgment, there has been no satisfaction. Equally im-

portant is it that plaintiff's present demand is based exclusively on tort and so is different in nature and basic form from his claim against the Correll bank. Therefore, his unpaid judgment against the latter may not be determinative, either as *res judicata* or election of remedies. Penn Anthracite Min. Co. v. Clarkson Sec. Co. 205 Minn. 517, 287 N. W. 15. Plaintiff has gotten nothing out of his demand against the Correll bank. So there is no payment thereon to reduce the damages, if any, which he has suffered from the alleged wrongful acts of defendants which are charged to be the wrongful cause of plaintiff's inability to collect.

My submission is that the order should be affirmed insofar as it strikes that portion of paragraph X of the complaint relating to the bank case, but that it should be reversed insofar as it strikes all of paragraph XII relating to the Aetna case.

GALLAGHER, CHIEF JUSTICE (dissenting).

I agree with the views expressed by Mr. Justice Stone.

MR. JUSTICE LORING took no part in the consideration or decision of this case.