STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-25

FEB ... '22 PM 2:32
ANDRO SUPERIOR COURT

RANDY VALLEE and
MISTY CALDWELL,

　　　　Plaintiffs

v.

CLIFFORD MERIN,

　　　　Defendant

ORDER ON MOTION IN *LIMINE*
REGARDING MEASURE OF
DAMAGES

Plaintiffs Randy Vallee and Misty Caldwell ("Vallee" and "Caldwell") have filed suit

against Defendant Clifford Merin ("Merin") alleging Merin negligently operated his motor

vehicle causing it to strike and injure their dog, Kane. (Complaint, ¶¶ 1-14). Vallee and Caldwell

seek damages in the form of $17,164.88 in veterinary bills incurred for Kane's treatment.

(Complaint, ¶15). On December 9, 2021, Merin filed a motion in *limine* asking the court to limit

Vallee and Caldwell's measure of damages to the fair market value of Kane, and to exclude

evidence of the veterinary bills.[1] Vallee and Caldwell filed their opposition and response on

December 23, 2021, and Merin filed his reply on January 13, 2022. For the following reasons,

Merin's motion in *limine* is denied.

The parties are in agreement that dogs are personal property. (Merin's Motion, p. 2,

Vallee and Caldwell's Opposition, p. 3.). "By common law, a dog is property, for an injury to

---

[1] Merin also seeks to exclude evidence of non-economic damages. But upon reviewing Vallee and Caldwell's complaint and opposition, they do not appear to be claiming non-economic damages related to Kane's injuries.

1

which an action will lie." *Chapman v. Decrow,* 45 A. 295, 298 (Me. 1899). And the parties seemingly agree that the measure of damages to property is the (1) difference in the value of the property before and after the actionable injury, or (2) the cost of repairing or restoring the property to its condition before the injury. (Merin's Motion, p. 2, Vallee and Caldwell's Opposition, p. 3, both citing Horton and McGehee, *Maine Civil Remedies* §4-3(c)(7) at 67-68(4ᵗʰ ed. 2004). From there however, their views diverge. Relying on cases from other jurisdictions, Merin asserts that as for animals such as dogs, damages should be limited to the animal's fair market value at the time of its destruction, and veterinary expenses are not recoverable to the extent they exceed the dog's value. (Merin's Motion, p. 3).

As the parties point out, Maine law is limited on the measure of damages in cases involving animals, and this particular issue is of first impression in Maine. (Merin's Motion, p. 3, Vallee and Caldwell's Opposition, p. 1). Merin still however asserts that existing Maine case law and statutory law indicate a plaintiff may not recover veterinary bills as damages for injury to a dog.

Maine's closest case to this issue is *Watson v. Proprietors of Lisbon Bridge,* 14 Me. 201 (1837), where plaintiff's horse was severely injured and ultimately died, but not until after monies were expended in an effort to save the horse. *Watson,* at 205. The Court held "The plaintiff is entitled to a fair indemnity for his loss. He has lost the value of his horse, and also what he has expended in endeavoring to cure him." *Id.* The court agrees with Merin's observation that as a form of property, horses back in 1837 more closely resemble commercial vehicles utilized in modern times. The court wrote in *Watson* "..this was an expense prudently incurred, in the reasonable expectation, that it would prove beneficial. It was incurred, not to aggravate, but to lessen, the amount for which the defendants might be liable. Had it proved

2

successful, they would have had the benefit of it." *Id.* When measuring damages for property damage, the holding from *Watson* is consistent with how property damage claims for property such as vehicles are addressed today- if a damaged vehicle can be repaired, the repair cost is usually the measure of damages, unless the repair cost exceeds the value of the property, at which point the vehicle is considered a total loss, and its value becomes the measure of damages. But this approach works only as well as the value of the property can be determined. As applied to this case, all that we should take away from *Watson* is that veterinary bills incurred in an effort to cure a damaged animal are a form of damages that can be under consideration.

Merin also asserts Maine's existing statutory law supports his position that veterinary bills are not recoverable. Merin directs us to two statutes in Title 7, to wit:

7 M.R.S.A. §3953-
> Except as provided in section 3951 and Title 12, section 12404, and unless the killing is justified to protect persons or property, a person who steals, confines or secretes, willfully or negligently injures or willfully or negligently kills a dog is liable in damages to the dog's owner in a civil action.

7 M.R.S.A. §3961-A-

> A person who owns or keeps a dog that attacks, injures or kills a service animal or assistance animal while the service animal or assistance animal is in discharge of its duties commits a civil violation for which a forfeiture of not more than $1,000 may be adjudged.
> When a person is adjudicated of a violation of this section, the court shall order the person to make restitution to the owner of the service animal or assistance animal for any veterinary bills and necessary retraining costs or replacement costs of the service animal or assistance animal if it is disabled or killed.
> For the purposes of this section, "service animal" has the same meaning as set forth in Title 5, section 4553, subsection 9-E. For the purposes of this section, "assistance animal" has the same meaning as set forth in Title 5, section 4553, subsection 1-H.

3

Merin asserts that because §3961-A specifically identifies veterinary bills recoverable for damage to a service animal, that it follows that veterinary bills are not recoverable for damage to a dog, or else the legislature would have included veterinary bills in §3953.

The court however also looks to 7 M.R.S.A. §3961, which addresses damage by an animal or a dog:

> **1. Injuries and damages by animal.** When an animal damages a person or that person's property due to negligence of the animal's owner or keeper, the owner or keeper of that animal is liable in a civil action to the person injured for the amount of *damage* done if the *damage* was not occasioned through the fault of the person injured.
> **2. Injuries by dog.** Notwithstanding subsection 1, when a dog injures a person who is not on the owner's or keeper's premises at the time of the injury, the owner or keeper of the dog is liable in a civil action to the person injured for the amount of the *damages*. Any fault on the part of the person injured may not reduce the *damages* recovered for physical injury to that person unless the court determines that the fault of the person injured exceeded the fault of the dog's keeper or owner.

The damages an individual may recover pursuant to §3961 include medical bills, lost wages and pain and suffering, even though those items of damages are not specifically identified in the statute. Section 3953 similarly uses only the term *damages*. Granted, §3953 addresses recovery for damage *to a dog*, while §3961 addresses *damages to a person* caused by a dog. None the less, §3953 use of only the term *damages* cannot be so restrictively read as to exclude veterinary bills.

Merin also points to proposed but failed legislation to support his position that the legislature has foreclosed recovery for damages to a dog beyond the dog's value. In 2017 the legislature declined to amend §3953 when it did not pass L.D. 419 which read:

> Damages may include, but are not limited to, actual damages, including veterinary fees and the value of the dog; damages for loss of companionship; damages for pain and suffering; and punitive damages. The prevailing party in any action under this section may recover attorney's fees from the nonprevailing party. (L.D. 419(128ᵗʰ Legis. 2017))

That the legislature failed to pass L.D. 419 does not necessarily mean veterinary fees are not recoverable. Without having more of the legislature history and testimony presented, what seems

most likely is the legislature had no appetite to amend §3953 so broadly as to include damages for loss of companionship, pain and suffering, or attorney fees. Attorney fees are not even recoverable in the typical personal injury action.

So, should veterinary fees be recoverable and presented to the jury for consideration as a measure of damages? This court finds that they should. As already discussed, *Watson* provides some precedent that veterinary expenses can be included in the measure of damages for an injured animal. And the parties would agree that typically for damage to property, damages include the cost to repair, accepting likely a limit at the value of the property. But this restriction on the formula fails us when the item of property has no measurable value. Pet dogs, which are an item of property, are such an example.

Vallee and Caldwell have identified a number of cases from other jurisdictions that the court finds logical and compelling. In *Burgess v. Shampooch Pet Indus.*, 131 P.3d 1248 (Kan. 2006), the Kansas court held that when an injured pet with no discernible market value is restored to its previous health, the measure of damages may include the reasonable and customary cost of necessary veterinary care. The court went on to define market value as the price for which an article is bought and sold, and is ordinarily best established by sales in the ordinary course of business. *Id.* at 1252. The dog in *Burgess* was a 13 year old Yorkshire terrier for which its owners originally paid $175.

In *Irwin v. Degtiarov*, 8 N.E. 3d 296 (Mass. 2014) the Massachusetts court held reasonable veterinary costs that are reasonably incurred can be recovered even if they exceed the market value or replacement cost. The court in *Irwin* relied on the precedent from a much earlier Massachusetts case, *Atwood v. Boston Forwarding &Transfer Co.*, 185 Mass. 557 (1904), which it interpreted as standing "… for the proposition that reasonableness is the touchstone….If it is

5

reasonable in the circumstances presented to incur the veterinary costs at the time they are undertaken, then the owner of the injured animal may recover them." *Irwin* at 301. Ironically, the reasoning by the Massachusetts court in 1904 deciding *Atwood* finding that expenses to cure are recoverable is strikingly similar to the reasoning articulated by our court in *Watson*. (See *Atwood* at 558-59).

To support his position that damages should be limited to the fair market value of the dog, Merin also has relied on cases from other jurisdictions. Those cases however are distinguishable. For example, in *Kling v. U.S.Fire Ins. Co.*, 146 So. 2d 635 (La. 1962) the plaintiff was seeking damages for the value of his dog who was killed by defendant's dog, plus the loss of the dog for breeding purposes, the loss as a watchdog, and the loss of future puppies. *Id.* at 641. The court held that of those items, only the value of the dog was recoverable, which amount was testified to by plaintiff's expert. *Id. Kling* is a different case than that presented in this case. In *Kling* the dog was killed, no veterinary bills were requested, and plaintiff's own expert provided evidence of the dog's value. That said, Kling does not foreclose other measure of damages if value is not determinable. The court in *Kling* quoted from *McCallister v. Sappingfield*, 72 Or. 422 " The market value of property is the proper measure of damages......But property may have a value for which a recovery may be had if it is destroyed, although it may have no actual value...there may have been no market value. If so, then some other criterion of value must be adopted."

*Lachenman v. Stice*, 838 N.E. 2d 451 (Ind. 2005), another case cited by Merin, also generally supports the proposition that the measure of damages for a dog killed is the value of the dog. But *Lachenman* is also very different from the case at hand. The dispute in *Lachenman*

6

was the claim for damages for intentional and negligent emotional distress, potential breeding income, and sentimental value. The court did not allow recovery for emotional distress and sentimental value, and the potential breeding income was denied because on the facts presented the claim was speculative. But as for admissible evidence that went to the value of the dog, the court held that admissible evidence is not limited to the dog's purchase price and veterinary bills. *Id.* at 467. In other words, veterinary bills are relevant and admissible.

Finally is *Soucek v. Banham,* 524 N.W.2d 478 (Minn. 1994), another case where the plaintiff's dog was killed. In *Soucek,* the damages claimed and denied were punitive damages and intrinsic value for the dog. Punitive damages were denied because the plaintiff suffered no personal injury. *Id.* at 480. And because under Minnesota law dogs are personal property, the court held the proper measure of damages was the fair market value of the animal. *Id.* at 481. *Soucek* did not address veterinary bills. Interestingly, despite holding that the measure of damages was the fair market value of the animal, the court awarded as compensatory damages the replacement cost of the animal (*Id.* at 479), consistent with the proposition that it is difficult, if not impossible, to assign a value to a pet dog.

The facts in *Burgess* and *Irwin,* cases Vallee and Caldwell rely upon, are similar to the facts of this case in that the dog was injured but not killed and the veterinary treatment was sought to restore the dog's health. In all three of the cases discussed above which Merin relies upon, the dog died. This generates the friction of this issue. If the dog dies, the value of the dog may be where to begin to measure damages, as dogs are considered property. But this does not mean veterinary expenses, if incurred in efforts to save the dog before it died, are not also recoverable and admissible at trial, as indicated by *Watson* and *Lachenman.*

The reality is, in most instances it is impossible assess the value of a family pet. Sure, people pay hundreds, even thousands, of dollars for a puppy. Vallee and Caldwell paid $1000 to purchase Kane from a friend. (Merin's Motion, p. 5). But purchase price usually has little correlation to a pet's value. Except for pets which possess value for breeding, acting as service animals, or offer some other economic return, pets rarely have an economic value. After acquiring their pet, over the course of hopefully several years, owners typically incur only expense with no income, as they feed their pet, train it, care for it, but of course experience the sharing of the pet's love, as the pet becomes a faithful companion, until the day the pet dies, breaking their owner's heart. How is it possible, along the course of a pet's life while it is really nothing more, nor less, than a loving friend and companion, to assess the pet's fair market value in dollars? And where is the market for "used" dogs? Typically, when a pet owner finds himself in the position of needing to find a new home for his pet, he hopes to find someone willing take the pet, or else be left with difficult task of taking the pet to the shelter. But should a pet become ill or injured, society promotes as humane and ethical rendering proper veterinary care at a reasonable expense to care for the pet. In the end, it is simply impossible to measure in dollars the bond between a pet dog and its owner, a bond which has been the subject of countless books and movies. That bond being immeasurable, it being equally difficult to assign a dog a fair market value.

The court finds that a pet dog such as Kane falls into the category of an item of property that may have no discernible market value and so the measure of damages may include the reasonable and customary cost of necessary veterinary care caused by Merin's alleged negligence. Relevant to reasonableness includes the dog's age and condition, nature of injuries, cost of treatment, and prognosis. *Zager v. Dimilia*, 524 N.Y.S. 2d 968 (1988). And any other

evidence relevant to the dog's value is also admissible, including purchase price, and current fair market value, if such a market can be established. Ultimately, the jury can determine the appropriate measure and amount of damages, and what amount of veterinary expenses, if any, are reasonable, subject to the jury's findings on liability, causation, and comparative fault.

The entry is:

Defendant Clifford Merin's motion in *limine* is DENIED. Evidence related to veterinary care and expense is admissible at trial and such expense is a recoverable item of damages.

The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: _____, 2022

_____
Harold Stewart, II
Justice, Superior Court